UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NASDAQ PRIVATE MARKET, LLC,

Plaintiff,

-v.-

THE HIIVE COMPANY LIMITED, HIIVE MARKETS LIMITED, THE HIIVE COMPANY (US) INC., HIIVE ADVISORS INC., HIIVE INVESTMENTS INC, CONOR BELZER, and PARINA GHAFARI

Defendants.

26 Civ. 5076 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

The Court is in receipt of Defendant Conor Belzer's motion for clarification of the June 18, 2026 Temporary Restraining Order ("TRO") (Dkt. #160-61), Plaintiff's opposition thereto (Dkt. #163-67), and Mr. Belzer's reply (Dkt. #169). Contrary to Plaintiff's suggestion (Dkt. #165 at 3-5), Mr. Belzer seeks clarification — not reconsideration — as to whether he can return to work at Hiive[1] on conditions that do not violate the June 18, 2026 Temporary Restraining Order's restrictive covenants (Dkt. #161 at 5).

Federal Rule of Civil Procedure 65(d)(1) requires an injunctive order to "(B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The Second Circuit has interpreted

[1] The term "Hiive" refers collectively to Defendants The Hiive Company Limited, Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc.

Rule 65(d) as requiring that "an injunction ... be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011) (quoting *S.C. Johnson & Son, Inc.* v. *Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001)). Adequate specificity "prevent[s] uncertainty and confusion" and "avoid[s] the possible founding of a contempt citation on a decree too vague to be understood." *Id.* at 143-44 (quoting *Schmidt* v. *Lessard*, 414 U.S. 473, 476 (1974)). At issue is the June 18, 2026 TRO, which restrains and enjoins Mr. Belzer:

(i) for a period of three months following entry of this Order, from directly or indirectly providing services to, working for, consulting with, advising, assisting, or otherwise participating in the business of [Hiive], or any affiliated entity, *in violation of the restrictive covenant provisions of the Continuing Obligations Agreement ("COA")*[; and]

(ii) for a period of one year following entry of this Order, from directly or indirectly soliciting, recruiting, inducing, encouraging, assisting in the solicitation or recruitment of, or otherwise interfering with Plaintiff's relationship with any current employee, customer, client, prospective customer, or business relationship protected by the

COA, the Restrictive Covenant Agreement, or any other agreement with Plaintiff.

(Dkt. #16 at ¶¶ 1-2 (emphases added)). The Court recognizes that, by referencing agreements extrinsic to the TRO, the Order could reasonably confuse Mr. Belzer as to its proper scope. *See Mickalis Pawn Shop, LLC*, 645 F.3d at 144-46; *see also* Fed. R. Civ. P. 65(d)(1)(C). As such, the Court takes this opportunity to explicate the metes and bounds of the June 18, 2026 TRO. (*See* Dkt. #16).

*First*, the Court agrees with Mr. Belzer that the June 18, 2026 TRO permits him to work with U.S. private issuers outside of the East Coast and international community. The COA's non-compete provision restricts Mr. Belzer from working "within the same geographic scope and functional area in which [Mr. Belzer] had substantial involvement during [his] last twelve (12) months of employment at [Nasdaq Private Market, LLC ("NPM")]." (*See* Dkt. #73-7 at 3). Mr. Belzer asserts, consistent with allegations in Plaintiff's first amended complaint, that his responsibilities at NPM were "East Coast and international client relationships." (*See, e.g.*, Dkt. #46-1 ¶ 42 (redacted first amended complaint); *see also* Dkt. #6 ¶ 39 (initial complaint)). Plaintiff now argues that Mr. Belzer "regularly operated outside" beyond the East Coast and international business communities. (*See* Dkt. #164, 167 (Mr. Belzer's client list); *see also* Dkt. #151 at 8 (Plaintiff's reply in support of its motion for a preliminary injunction)). But that position is inconsistent with Plaintiff's earlier pleadings, and the Court declines to credit it at this stage. *See Essilor*

*Int'l SAS* v. *J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 86 (S.D.N.Y. 2023) ("It is well established in this [D]istrict that a plaintiff cannot amend his pleadings in his opposition briefs." (internal quotation marks and citation omitted)); *see also Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (same).

*Second*, the Court confirms that the June 18, 2026 TRO permits Mr. Belzer (i) to solicit business from private issuers with whom he had no prior involvement while at NPM, and (ii) to accept unsolicited business from private issuers regardless of his previous relationship with them at NPM. The COA's non-compete provision applies only to "customer relationship[s NPM] has with any of its current customers or potential customers that [Mr. Belzer] had any involvement with, directly or indirectly[.]" (Dkt. #46-1 ¶ 49). The Restrictive Covenant Agreement similarly restricts Mr. Belzer's solicitation of private issuers "with whom [Mr. Belzer] first had direct or indirect contact … during [his] employment with [NPM]." (*Id.* ¶ 58). The June 18, 2026 TRO does not impose a blanket restriction on all of Mr. Belzer's business activities. Thus, by the same token, Mr. Belzer is free to solicit private issuers with whom he has had no direct or indirect contact while employed at NPM. Relatedly, the Court declines to enjoin Mr. Belzer from accepting business from private issuers at Hiive, even if he has had previous contact with those issuers at NPM. The restrictions placed on Mr. Belzer's business activities are primarily designed to prevent him from actively "[s]olicit[ing], divert[ing], tak[ing] away or

attempt[ing]" to take away Plaintiff's customers, not to stop him from passively servicing issuers who approach him on their own accord. (*Id.*).

Accordingly, the Court GRANTS Defendant Belzer's motion for clarification in full. It is hereby ORDERS that the June 18, 2026 TRO is clarified as follows:

(1) Belzer may work for Hiive: (i) servicing private issuers headquartered anywhere in the United States, except for the East Coast; and (ii) communicating with those private issuers' employees.

(2) Belzer may (i) solicit any private issuer with whom he had no involvement or contact while working at NPM; and (ii) notwithstanding prior involvement or contact by Belzer while working at NPM, accept unsolicited business from, and respond to and answer the factual inquiries of, any private issuer.

In addition, the Court recognizes that, under the "Restrictive Covenant Enforcement" provision in the June 18, 2026 TRO (Dkt. #16 ¶ 1), Mr. Belzer is restrained and enjoined "for a period of three months following entry of this Order." As Plaintiff notes, this timeline is somewhat confused by the fact that the TRO is set to "remain in effect until the Preliminary Injunction hearing or further Order of the Court." (*Id.* ¶ 12). Because of scheduling conflicts among the parties, the Preliminary Injunction hearing could not be scheduled within this three-month period; however, the Court understands that Plaintiff intended the Restrictive Covenant Enforcement provision to extend until the preliminary injunction motion was resolved. For the avoidance of doubt, the

Court hereby ORDERS the Restrictive Covenant Enforcement provision to remain in effect until the Preliminary Injunction hearing or further Order of the Court.

The Clerk of Court is directed to terminate the pending motions at docket entry 160.

SO ORDERED.

Dated: September 9, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge