UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NASDAQ PRIVATE MARKET, LLC,

Plaintiff,

-v.-

THE HIIVE COMPANY LIMITED, HIIVE MARKETS LIMITED, THE HIIVE COMPANY (US) INC., HIIVE ADVISORS INC., HIIVE INVESTMENTS INC., CONOR BELZER, and PARINA GHAFARI

Defendants.

26 Civ. 5076 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

In an oral ruling issued on October 6, 2026 (the "October 6 Oral Decision" or "Tr." (Dkt. #246, 247)), the Court granted in part the motion for a preliminary injunction brought by Plaintiff Nasdaq Private Market, LLC ("NPM" or "Plaintiff"). (*See* Minute Entry for October 6, 2026). The decision followed extensive briefing, a two-day evidentiary hearing, and testimony from seven live witnesses. One day later, the Court formalized its oral decision in a written order (the "October 7 Written Order" (Dkt. #210)) that (i) enjoined Defendant Conor Belzer from working with Defendant Hiive[1] "nationwide and internationally, in violation of the restrictive covenant provisions of the Restrictive Covenant Agreement ('RCA')," until May 19, 2027; (ii) restrained Belzer from soliciting NPM customers and employees; and (iii) bound all three Defendants — Belzer, Hiive, and Parina Ghafari — to obligations regarding the

[1] "Hiive" refers to the five Hiive entities: The Hiive Company Limited, Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc.

non-use, preservation, return, deletion, identification, and certification of NPM's confidential information. (*See generally* October 7 Written Order).

Defendants now move for reconsideration of the Court's October 6 Oral Decision pursuant to Local Civil Rule 6.3 and Federal Rules of Civil Procedure 54(b) and 65(c) (Dkt. #220),[2] and for correction of the October 7 Written Order pursuant to Federal Rule of Civil Procedure 60(a) (Dkt. #224), both of which applications Plaintiff opposes (Dkt. #235, 237). For the reasons set forth below, the Court grants in part and denies in part Defendants' motions.

## A. Defendants' Motion for Reconsideration[3]

Motions for reconsideration in this District are governed by Local Civil Rule 6.3, which requires the movant to "set[ ] forth concisely the matters or controlling decisions which the moving party believes the Court has overlooked." *Shenzhen Molly Tea Food & Beverage Mgmt. Co.* v. *MHL NY LLC*, No. 26 Civ. 4051 (JPC), 2026 WL 2410042, at *5 (S.D.N.Y. Aug. 18, 2026) (quoting S.D.N.Y. Loc. Civ. R. 6.3). Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (analyzing a motion brought under Federal Rule of Civil Procedure 59(e)); *see Sikhs for Just.* v. *Nath*, 893 F. Supp. 2d 598,

---

2 Defendants also "ask[ed] the Court to set an expedited briefing schedule" because the preliminary injunction imposed "significant hardship … on Belzer" and their request for relief was based on "narrow grounds." (Dkt. #221). But Defendants failed to demonstrate why expedited briefing was necessary, and the Court, accordingly, denied their request. (*See* Dkt. #227).

3 The Court assumes the parties' familiarity with the underlying facts and the procedural history in this case.

605 (S.D.N.Y. 2012) (explaining that Local Civil Rule 6.3 uses the same standard as motions under Rule 59).

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). But the motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Indeed, "[t]he Second Circuit 'disapproves of the practice of trying to relitigate on a fuller record preliminary injunction issues already decided.'" *City of New York* v. *Lopez*, No. 21 Civ. 7862 (JPO), 2025 WL 1638033, at *2 (S.D.N.Y. June 10, 2025) (alterations adopted) (quoting *Semmes Motors, Inc.* v. *Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir. 1970)).

Defendants assert that reconsideration is warranted here because (i) the record did not contain "any finding of irreparable harm before granting injunctive relief" as to Belzer (Dkt. #221 at 3-5); (ii) the Court "found no basis to enjoin Ghafari or Hiive," and thus could not continue to enjoin them from using NPM's confidential information (*id.* at 5-6); (iii) the Court did not resolve

whether a worldwide non-compete was reasonable and enforceable under New York law (*id.* at 6-11 (citing *BDO Seidman* v. *Hirshberg*, 93 N.Y.2d 382 (1999))); and (iv) the $25,000 security bond should be increased to reflect a year of lost earnings for Belzer (*id.* at 11-12). The Court considers each argument in turn.

### 1. The Record Supported, and the Court Found, a Likelihood of Irreparable Harm in Connection with Belzer's Breach of Contract

To begin, Defendants argue that the Court did not explicitly find irreparable harm from Belzer's breach of contract and, even if the Court had, the record did not support such a finding. (Dkt. #221 at 3-5). For substantially the reasons provided in Plaintiff's submission (Dkt. #235 at 3-7), the Court holds that it clearly found irreparable harm necessitating injunctive relief as to Belzer, and, further, that this finding was supported by the record.

As the Court recognized in its October 6 Oral Decision, a movant seeking preliminary injunctive relief must establish: (i) a likelihood of success on the merits; (ii) irreparable harm absent preliminary relief; (iii) the balance of equities tipping in the movant's favor; and (iv) an injunction is in the public interest. (*See* Tr. 342:3-10 (quoting *Hudson Shore Assocs. Ltd. P'ship* v. *New York*, 139 F.4th 99, 106 (2d Cir. 2025))). *See also Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65. Of these four prerequisites, "[t]he irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction and must therefore be satisfied before the other requirements for an injunction can be considered." (*See* Tr. 342:11-17 (quoting *St. Joseph's Hosp. Health Ctr.* v. *Am.*

*Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (internal quotation marks and citation omitted))). "To establish irreparable harm, the moving party must show an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" (*See id.* at 342:17-21 (quoting *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106 (internal quotation marks and citation omitted))).

After setting forth the applicable law, the Court observed that it would "be addressing in the first instance likelihood of success on the merits," and "[a]t times … delving into irreparable harm." (*See* Tr. 342:22-24). After all, if the claim was not likely to succeed on the merits, further consideration of irreparable harm would be superfluous. *See Sadowsky* v. *City of New York*, 732 F.2d 312, 316 (2d Cir. 1984) (finding it "unnecessary to reach the issue of irreparable harm since appellants have shown neither a likelihood of success on the merits nor the presence of serious questions going to the merits").

As relevant here, the Court concluded that Belzer had likely breached his 12-month contractual obligations in the RCA "to refrain from soliciting NPM employees and business relationships for one year following his termination; … to protect NPM's confidential information; and … to return all NPM property and confidential information upon his separation." (Tr. 349:23-350:6, 351:2-10 (discussing Count II of the First Amended Complaint (Dkt. #114))). Specifically, Plaintiff had demonstrated that Belzer "deliberate[ly]" and "anomalous[ly]" downloaded trade secrets on May 1 and 3, 2026, with no apparent business justification (Tr. 344:4-25, 345:1-16); potentially

"misappropriated trade secrets and possibly … while walking out the door of NPM" (*id.* at 347:23-25, 348:1-3); and likely solicited one to two NPM employees either for confidential information or recruitment to Hiive (*id.* at 350:2-6, 357:2-8). The weight of the evidence thus persuaded the Court that Belzer had breached his contractual obligations. (*See id.* at 350:1-6 ("Based on what I've seen at the hearing, it appears that he violated all four [contractual] provisions, given the above discussion that I've had about the trade secrets and given his solicitation of … one to two NPM employees[.]")).

Defendants now argue that the Court presumed, rather than explicitly found, a likelihood of irreparable harm, but a plain reading of the October 6 Oral Decision demonstrates otherwise. At the outset, the Court stated that it was "granting [the motion for a preliminary injunction] in part as to [ ] Belzer" (Tr. 339:17) because "there [wa]s merit to NPM's [claim] that departing employees took confidential trade secrets with them when they left and that they breached certain of their contractual obligations" (*id.* at 339:21-23), and that injunctive relief was "partly necessary to address the harm that's been evidence by the record in this case" (*id.* at 340:1-2). The Court's opening remarks clearly stated its findings that Belzer likely breached his contractual obligations, and that an injunction would address the "harm" likely to result from this breach. (*See id.* at 339:13-25, 340:1-8).

Having found that Belzer likely breached his contractual obligations, the Court then explored "whether injunctive relief [wa]s warranted" — a question that served as its starting point for analyzing irreparable harm. (Tr. 350:7-8).

The Court explained that it did not "believe [that] … Belzer currently possesse[d] or use[d] or even ha[d] access to NPM's trade secrets" after Belzer represented that all secrets had been returned to NPM. (*Id.* at 350:7-12). The Court, therefore, did not "believe that further injunctive relief [wa]s warranted" for protecting NPM's confidential information. (*Id.*). But unlike the confidential information provision, the Court "enforce[d] the non-compete that was a part of the RCA" and the non-solicitation provision as "modified in light of the motion for clarification." (*Id.* at 359:10-22). By enforcing the non-compete and non-solicitation provisions while declining to enforce the confidential information, the Court made plain that only a breach of the former two provisions was likely to result in irreparable harm.

Finally, contrary to Defendants' assertions, the record supported a finding of irreparable harm resulting from Belzer's breach of contract. Indeed, the Court's determination of irreparable harm was premised on the same evidence supporting its likelihood-of-success analysis: Belzer's download and potential misappropriation of trade secrets, coupled with his solicitation of NPM employees. Defendants have not provided "new evidence" to the Court that would justify its reconsideration of injunctive relief as to Belzer. *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255 (listing a "major grounds justifying reconsideration" as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks and citation omitted)). And there can be no doubt that the Court considered, and explicitly found, a likelihood of irreparable

harm arising from Belzer's breach of contract.[4]

**2. The Court's Grant of Injunctive Relief Does Not Apply to Ghafari and Hiive**

Next, Defendants assert that the Court had no basis to enjoin Ghafari or Hiive to continue to protect NPM's confidential information, preserve evidence, return information, delete evidence and information, and identify and certify discoveries. (Dkt. #221 at 5-6). As a preliminary matter, the Court finds this argument to be peculiar: If — as Belzer, Ghafari, and Hiive have represented — they have returned all of NPM's confidential information, then refraining from using this information requires nothing of them. (Tr. 335:4-11, 348:12-15; Dkt. #237 at 7). Defendants are, nonetheless, correct that the Court did not "find a basis for injunctive relief" against Ghafari (Tr. 347:23-348: 8, 351:2-21), or against Hiive (*id.* at 348:6-349:1, 351:22-351:17). And, as discussed above, the Court explicitly held that Belzer's contractual breaches "regarding the protection of confidential information [do not warrant] … further injunctive relief … because … Belzer currently [does not] possess[ ] or use[ ] or even ha[ve]

[4] In a footnote, Defendants contend that the Court should have applied a "heightened" standard to determining the propriety of injunctive relief because it "g[ave] NPM more than the relief it sought and, if Belzer prevails at trial, his seven months of preclusion from employment cannot be meaningfully undone." (Dkt. #221 at 4 n.3). The Court disagrees. For one thing, NPM explicitly asked for the scope of the injunction that the Court granted, stating: "[T]he way NPM's noncompete agreement reads is, under the circumstances, a nationwide ban. And, your Honor, that is what we would ask the [C]ourt to impute upon Mr. Belzer[.]" (Tr. 316:15-18). For another, the case law points to the opposite conclusion. *See Accenture LLP* v. *Trautman*, No. 21 Civ. 2409 (LJL), 2021 WL 6619331, at *8 (S.D.N.Y. June 8, 2021) ("[A] court consider[ing] whether to enjoin an employee from continuing to perform services that a past employer alleges violates a restrictive covenant … need not apply the heightened standard applicable to mandatory injunctions, as opposed to status quo injunctions, which would require that the movant establish a clear or substantial likelihood of success on the merits." (internal quotation marks and citation omitted)).

access to NPM's trade secrets." (*Id.* at 350:8-12).

Accordingly, the Court grants Defendants' request to reconsider only as to the provisions in the preliminary injunction that enjoin Defendants Ghafari, Hiive, and Belzer to continue to protect NPM's confidential information, preserve evidence, return information, delete evidence and information, and identify and certify discoveries. *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255. The Court will amend its October 7, 2026 Written Order under separate cover to (i) edit the Preamble to align with Defendants' suggestions in their motion to correct;[5] and (ii) omit Paragraphs 4 through 8. To the extent that Plaintiff wishes to maintain these preservation, return, and deletion obligations as to Ghafari and Hiive, Plaintiff can recommend adding such language to its Proposed Civil Case Management Plan. (*See* Dkt. #221 at 6 n.4; Dkt. #235 at 7).

**3. Defendants Have Waived Any Arguments Regarding the Reasonableness of the Non-Compete Provision Against Belzer**

As a third basis for reconsideration, Defendants argue that the Court should have determined whether the non-compete provision enforced against Belzer was reasonable and enforceable under New York law (Dkt. #221 at 6-

---

[5] At Defendants' suggestion, the Court will adopt the following language in the Preamble:

> [T]he Court DENIES Plaintiff's Motion for a Preliminary Injunction as to Defendants The Hiive Company Limited, Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc., and Parina Ghafari. As to Defendant Conor Belzer, the Court finds good cause to GRANT in part Plaintiff's Motion for a Preliminary Injunction, and ORDERS as follows[.]

(Dkt. #225 at 7).

11) — even though Defendants never raised this issue (Dkt. #235 at 7-8). As discussed above, in the October 6 Oral Decision, the Court enforced the 12-month non-solicitation provision and non-compete provision as provided in the RCA. (Tr. 359:10-16). There was no question that the RCA imposed restrictions "for a period of 12 months from the last day of [ ] Belzer's employment." (*Id.* at 359:16-20). The more difficult issue was the geographic scope of the RCA's non-compete provision. (*Id.* at 359:18-22).

The Court "[l]ook[ed] at the language of the RCA," which provided, in relevant part:

> Non-Competition and Non-Solicitation. During Grantee's employment … and *for a period of 12 months after Grantee's employment* with the Company Group ends for any reason, Grantee will not, whether for Grantee's own account or for any other Person, directly or indirectly, with or without compensation: (a) provide services to any Competitive Business that are the same or substantially similar to the services provided by Grantee at any time during the then-immediately preceding 24 months ending no later than Grantee's last day of employment with the Company Group … *within the United States or in any other country in which Grantee conducted business or had responsibilities* (either direct or supervisory) on behalf of the Company Group at any time during the then-immediately preceding 24 months ending no later than Grantee's last day of employment with the Company Group *or, if the Company specifically limited Grantee's geographic territory for conducting business or holding responsibilities to a more restricted area, within such area.*

(Dkt. #75-1 at 17-18 (emphasis added)). The Court interpreted this language to mean that the geographic scope of the non-compete covered either (i) the United States and any other country where Belzer did business; or (ii) a

specifically defined, restricted territory. (*See* Tr. 359:23-360:1 ("Looking at the language of the RCA, it appears to require a specific restriction, a specific limit on the geographic territory for conducting business or holding responsibilities to a restricted area.")).

Reviewing the record, the Court observed that NPM "perhaps" had a "custom and practice" of limiting Belzer to the East Coast and international client relationships, but that he also "was frequently tapped to handle other clients," and, perhaps more importantly, "approximately 23 percent of his clients [fell] outside of that [territory]." (Tr. 360:1-20). Thus, in practice, Belzer worked nationwide and internationally. And, crucially, the Court could not identify any NPM "contractual provision that limit[ed] … Belzer to [the east coast and international] area[s]." (*Id.* at 360:8-9). Without any clear contractual limitations on his geographic scope of work, the Court found that the geographic scope of the injunction was worldwide: "[B]ased on the evidence that I have and *in the absence of someone arguing to me that New York law would not recognize a nationwide noncompete for this period of time on this record*, I am imposing the noncompete for one year nationwide" and internationally. (*Id.* at 360:22-361:1 (emphasis added); *see also* October 7 Written Order (enjoining Belzer "for a period of twelve (12) months following May 19, 2026, from directly or indirectly providing services to, working for, consulting with, advising, assisting, or otherwise participating in the business of [Hiive], … *nationwide and internationally*" (emphasis added))).

Defendants now raise the argument as to which they were previously

silent: the reasonableness of the RCA's non-compete provision. Although Defendants concede that the Court correctly described *BDO Seidman*'s test for whether a restrictive covenant is reasonable, and thoroughly considered the geographical scope of the RCA, Defendants argue that the Court's failure to explicitly discuss whether the RCA was "reasonable" under New York law constituted "clear error." (*See* Dkt. #221 at 6-7). In support of their argument, Defendants cite *JLM Couture, Inc.* v. *Gutman*, in which the Second Circuit vacated a preliminary injunction enforcing a restrictive covenant "that limit[ed] [the employee's] ability to work for five years following the termination of her employment with [the employer]" because "the district court failed to consider whether the restrictive covenant was likely to be enforceable under New York law" and consistent with "*BDO Seidman*'s remaining criteria for enforcement." 91 F.4th 91, 105-07 (2d Cir. 2024).

Defendants omit a critical detail: In the district court proceedings of *JLM Couture*, the employee *affirmatively* argued that "the full temporal scope of [the restrictive covenant] may exceed the bounds of a *reasonable* restrictive covenant." *JLM Couture, Inc.* v. *Gutman*, No. 20 Civ. 10575 (LTS), 2023 WL 2503432, at *19 n.13 (S.D.N.Y. Mar. 14, 2023) (emphasis added), *aff'd in part, vacated in part, remanded*, 91 F.4th 91 (2d Cir. 2024). The district court erroneously held that it "need not engage at this point with [the employee's] suggestion" because "the [c]ourt is merely granting preliminary injunctive relief to require [the employee's] compliance with the plain language of the [c]ontract pending a prompt resolution of the merits of this case." *Id.* By contrast, here,

Defendants failed to raise any arguments — in their briefing and during the two days of hearings — regarding the reasonableness of the non-compete provision in the RCA. (*See generally* Tr. 1-338; *see also* Dkt. #128 at 18 (citing *BDO Seidman* only to argue that "there is nothing unfair where, as here, the employee seeks to compete for prospective clients with whom he has never formed a relationship"); *see also* Dkt. #195).

The Court reminds Defendants that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp.*, 156 F.3d at 144. Importantly, a party is "barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *City of Austin Police Ret. Sys.* v. *Kinross Gold Corp.*, 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). In other words, "'a party may not advance new facts, issues[,] or arguments not previously presented to the Court' on a motion for reconsideration." *Steinberg* v. *Elkman*, 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh* v. *Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001)); *see also Sompo Japan Ins. Co. of Am.* v. *Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) ("Generally, we will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration." (internal quotation marks and citation omitted)).

As applied here, the Court will not consider Defendants' reasonableness

arguments raised in the first instance in their motion for reconsideration. Defendants had ample opportunity to raise this issue earlier, and their belated effort to do so now is, in substance, "a second bite at the apple." *Sequa Corp.*, 156 F.3d at 144.[6]

**4. The Court Considered the Adequacy of the Security Bond**

As a final argument for reconsideration, Defendants contend that the Court failed to consider the adequacy of the $25,000 security bond in relation to a year of lost earnings for Belzer (Dkt. #221 at 11-12), which bond amount they alleged in their briefing was "grossly inadequate" (Dkt. #128 at 26). Under Rule 65(c) of the Federal Rules of Civil Procedure, the amount of a bond securing an injunction should be "such sum as the court deems proper." "Rule 65(c) gives the district court wide discretion to set the amount of a bond." *Lashify, Inc.* v. *Qingdao Network Tech. Co.*, No. 25 Civ. 4183 (LJL), 2025 WL 2298837, at *3 (S.D.N.Y. Aug. 8, 2025) (quoting *Doctor's Assocs., Inc.* v. *Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)); *see also DeWitt Stern Grp., Inc.* v. *Eisenberg*, No. 13 Civ. 3060 (RWS), 2013 WL 2420835, at *6 (S.D.N.Y. June 4, 2013) ("The language of Rule 65(c) confers broad discretion on the trial judge to set the

---

[6] The Court observes that, for substantially the same reasons raised in Plaintiff's submission, Defendants' *post hoc* reasonableness arguments are also suspect on the merits. Courts in this District have enforced non-compete provisions that have "no geographic limitation" where "an employer's business is conducted worldwide to a global customer base." *Palantir Techs., Inc.* v. *Jain*, No. 25 Civ. 8985 (JPO), 2026 WL 622007, at *10 (S.D.N.Y. Mar. 5, 2026) (quoting *Reed Elsevier Inc.* v. *Transunion Holding Co.*, No. 13 Civ. 8739 (PKC), 2014 WL 97317, at *7 (S.D.N.Y. Jan. 9, 2014)). And "New York courts have routinely found one-year restrictions to be reasonable." *Marsh USA Inc.* v. *Karasaki*, No. 08 Civ. 4195 (JGK), 2008 WL 4778239, at *16 (S.D.N.Y. Oct. 31, 2008); *see also, e.g.*, *Hercules Pharms., Inc.* v. *Cherne*, No. 24-2545-cv, 2025 WL 1099431, at *2 (2d Cir. Apr. 14, 2025) (summary order) (upholding an injunction limited to twelve months as "reasonable[ ] under governing New York law").

amount of the bond, even to dispense with the bond requirement altogether." (internal quotation marks and citation omitted)).

Using this discretion, the Court held that it would "keep the security at $25,000," as originally set in the temporary restraining order ("TRO"). (Tr. 361:16; October 7 Written Order 5; *see also* Dkt. #16 at 5 (TRO)). Without the presentation of any new facts, intervening law, or clear errors in its decision-making process, the Court declines to relitigate the issue of the security bond. *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255.

**B. Defendants' Motion to Correct**

Rule 60(a) of the Federal Rules of Civil Procedure permits a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Fed. R. Civ. P. 60(a). The Second Circuit has determined that "a Rule 60(a) motion is appropriate 'where the judgment has failed accurately to reflect the actual decision of the decision maker to award such interest.'" *Robert Lewis Rosen Assocs., Ltd.* v. *Webb*, 473 F.3d 498, 504 (2d Cir. 2007) (quoting *In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir. 1986)). Thus, while a court may not make "changes that alter the original meaning to correct a legal or factual error," it may make such corrections as are necessary in order to "implement the result intended by the court at the time [an] order was entered.'" *Rezzonico* v. *H & R Block, Inc.*, 182 F.3d 144, 150-51 (2d Cir. 1999) (internal quotation marks and citation omitted).

Defendants assert that the October 7 Written Order fails to conform with

the October 6 Oral Decision in three key respects:

(i) The non-solicitation provision in Paragraph 2 of the October 7 Written Order does not use "the same language that [the Court] employed in connection with ... Belzer's motion for clarification" (Dkt. #225 at 2, 7 (citing Tr. 350:15-19)), and should be corrected to state that:

> Defendant Belzer is restrained and enjoined, for a period of twelve (12) months following May 19, 2026, from soliciting NPM's customers, provided that Belzer can (i) solicit any private issuer with whom he had no involvement or contact while working at NPM; and (ii) notwithstanding any prior involvement or contact by Belzer while working at NPM, accept unsolicited business from, and respond to and answer the factual inquiries of, any private issuer.

(*See* Dkt. #170 at 5 (clarifying the TRO)).

(ii) The Preamble and Paragraphs 4 through 8 of the October 7 Written Order improperly enjoin Hiive and Ghafari to maintain confidential information, preservation, return, and deletion obligations (Dkt. #225 at 2, 7 (citing Tr. 339:13-17)); accordingly, Paragraphs 4 through 8 should be deleted, and the Preamble should be corrected to state that:

> [T]he Court DENIES Plaintiff's Motion for a Preliminary Injunction as to Defendants The Hiive Company Limited, Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc., and Parina Ghafari. As to Defendant Conor Belzer, the Court finds good cause to GRANT in part Plaintiff's Motion for a Preliminary Injunction, and ORDERS as follows:

and

(iii) Paragraph 7 of the October 7 Written Order incorrectly cross-references a paragraph number that no longer exists; accordingly, Paragraph 7 should be corrected to reflect the proper cross-reference (Dkt. #225 at 2, 7).

The Court's resolution of Defendants' motion to reconsider has mooted

Defendants' second request (the improper injunction of Hiive and Ghafari) and third request (the typographical error in a cross-reference). As to Defendants' first request regarding the Non-Solicitation of Customers Provision, Defendants are correct that the Court intended to insert language that parallels the language of the non-solicitation provision previously used in its order clarifying the TRO. (*See* Tr. 350:15-19 ("I am enjoining … Belzer from soliciting customers and employees of NPM, but I'm using the same language that I employed in connection with [ ] Belzer's motion for clarification.")). As such, the Court grants Defendants' application to amend the October 7, 2026 Written Order to be consistent with its order clarifying the TRO.

However, the Court observes that any substantive disputes about the non-solicitation provision are largely "academic," because the worldwide non-compete provision enjoined Belzer from having "any interaction with a customer" and "competing with NPM" for 12 months. (*See* Tr. 364:3-15, 365:2-10). Said differently, the breadth of the non-compete provision effectively swallows up any allowances under the non-solicitation provision.

****

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motions to reconsider and to correct the preliminary injunction so that the written order accords with the Court's oral decision. Consistent with this ruling, the Court will issue an amended preliminary injunction under separate cover.

The Clerk of Court is directed to terminate the pending motions at docket entries 220 and 224.

SO ORDERED.

Dated: November 16, 2026
New York, New York

KATHERINE POLK FAILLA
United States District Judge