RILEY SAFER HOLMES & CANCILA LLP

Megan DeMarco
312-471-8679
mdemarco@rshc-law.com

November 16, 2026

**VIA ECF FILING**
Hon. Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse, Courtroom 618
40 Foley Square, New York, NY 10007

**MEMO ENDORSED**

Re: *Nasdaq Private Market, LLC v. The Hiive Company Limited, et al.*, Case No. 1:26-cv-05076 (KPF)

**Hiive's and Belzer's Response to NPM's Letter Motion to Enforce the Preliminary Injunction Order**

[PAGE INTENTIONALLY LEFT BLANK]

Dear Judge Failla,

Defendants Hiive[1] and Conor Belzer respectfully oppose Nasdaq Private Market, LLC's ("NPM") Motion to Enforce the Court's Preliminary Injunction Order (the "PI Order," Dkt. 210).

The facts are simple and established by the very exhibits attached to NPM's Motion. Though NPM claims "Belzer has continued working for and acting on behalf of Hiive up to and including as recently as November 11, 2026" (Mot. 1) that is not true. Hiive expressly told NPM: "**Mr. Belzer's access to all [Hiive] systems was cut off on October 6, 2026, and he has not done any work for [Hiive] since that date**." (Mot. Ex. H.) NPM's Motion conspicuously fails to mention this statement. Insofar as NPM is demanding a declaration attesting to information it already possesses, Hiive attaches that declaration. *See* Exh. 1.

NPM's real purpose is to seek relief the PI Order does not impose and NPM never asked for: that Hiive terminate Belzer, end his FINRA registration, and file a Form U5. NPM represented that it sought "narrowly tailored" relief that "neither alters the status quo nor grants irreversible relief." Dkt. 155 at 11. Terminating Belzer, deregistering a broker, and filing a Form U5 would do both.

NPM's Motion confirms that NPM is not using the PI Order to protect any legitimate interest. *See* Dkt. 222 at 2, 8-10. NPM does not claim Belzer used or disclosed NPM confidential information or solicited NPM clients or employees. It complains about a LinkedIn title, "likes" and congratulatory comments, and a FINRA listing, not anything concerning NPM. A restrictive covenant may be enforced only to the extent required to protect a legitimate interest. *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999).

## I. Belzer is On Garden Leave and Has Done No Work for Hiive Since October 6.

NPM's Motion is replete with other baseless accusations contradicted by its own exhibits:

| NPM's Contention | NPM's Attached Evidence |
|---|---|
| Belzer's LinkedIn "Activity" "shows him continuing to engage with issuers, customers, and law firms in support of his role at Hiive after October 7, 2026." Mot. 1. | Ex. I shows Belzer "liking" posts and congratulating professional contacts on achievements. NPM does not identify post-October 7 activity in which Belzer discussed Hiive's business or "support[ed] his role." |
| Hiive's counsel offered "carefully hedged assurances" that Belzer is not "currently" working for Hiive and does not "currently" have access to its systems. Mot. 2. | NPM itself asked Hiive to confirm whether Belzer was "currently" working for Hiive or "currently" had access to its systems. Ex. C. |
| Hiive's counsel "did not deny that Belzer has been working for Hiive from October 7 to present." Mot. 3. | Hiive confirmed Belzer's access was cut off on October 6 and "he has not done any work for [Hiive] since that date." Ex. H. |
| "Belzer wiped or removed his LinkedIn account" at Hiive's direction, and Hiive's counsel "confirmed they deleted Belzer's LinkedIn account." Mot. 2-3. | Hiive said the opposite: "Mr. Belzer's LinkedIn account has not been deleted or wiped, nor has [Hiive] taken any action regarding Mr. Belzer's LinkedIn profile." Ex. H. NPM's November 13 download of Belzer's LinkedIn (Ex. I) would be impossible if the account had been wiped. |

[1] "Hiive" is The Hiive Company Limited, Hiive Markets Limited, The Hiive Company (US) Inc., Hiive Advisors Inc., and Hiive Investments Inc. Hiive is now known as Clarity.

The LinkedIn activity NPM relies on consists primarily of Belzer "liking" others' posts, plus short congratulatory comments to contacts, such as "Congrats, Danny! This is most certainly well deserved." Ex. I, Page 150. NPM identifies no activity by Belzer that discusses Hiive's business, solicits anyone, discloses NPM information, or provides any service to Hiive. Nor does Ex. I identify anyone as a customer of Hiive or NPM. Hiive has not filed a Form U5 for Belzer because, as it explained to NPM, he is on garden leave: his employment and registration have not been terminated. Ex. H. A LinkedIn profile and FINRA record that accurately display Belzer is a Hiive employee are not evidence that he is providing services to Hiive.

NPM's spoliation theory fares no better. When NPM's counsel asked on November 11 that Belzer's LinkedIn profile be corrected "to remove any affiliation with Hiive after the date of" the PI Order (Ex. C), Belzer promptly "hibernated" his account, a LinkedIn function that limits a profile's visibility without deleting its content.[2] He did so on his own, not at anyone's direction. When NPM then raised concerns about deletion, he reactivated the account and removed the employment association with Hiive. Ex. H. NPM's own Ex. I, a download of Belzer's LinkedIn activity from mere hours before NPM filed its Motion, shows the content still exists. NPM's baseless claims that Belzer "wiped" his account at Hiive's direction and that Hiive "confirmed they deleted" it (Mot. 2) are directly contradicted by Ex. H and Ex. 1.

## II. Hiive and Belzer are Not in Contempt.

NPM cannot show (1) the PI Order is clear and unambiguous as to the restrictions NPM seeks to impose; (2) clear and convincing proof of non-compliance; and (3) Hiive and Belzer have not diligently attempted to comply in a reasonable manner. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

### A. The PI Order does not clearly require termination, deregistration, or a Form U5.

NPM quotes Paragraph 1 without its limiting language. The PI Order bars Belzer from "directly or indirectly providing services to, working for, consulting with, advising, assisting, or otherwise participating in the business of [Hiive], nationwide and internationally, *in violation of the restrictive covenant provisions of the [RCA]*." *Compare* Dkt. 210, ¶ 1 (emphasis added) *with* Mot. 1. As the Court recognized in granting Belzer's Motion to Clarify the TRO (Dkt. 170), that incorporation of the covenant defines the scope of the prohibited conduct. *See also Healthworld Corp. v. Gottlieb*, 12 A.D.3d 278 (N.Y. App. 2004) (a PI enforcing a restrictive covenant may not "impose[] restrictions that [a]re broader than those contained in the" covenant).

As NPM itself argued when seeking the PI Order, the RCA's non-compete provision is "narrowed to prohibit [Belzer] from only providing the 'same or substantially similar' services he provided to NPM." Dkt. 69 at 19. Nothing in the PI Order or the RCA addresses payroll status, employment title, regulatory registration, or social media. In other words, the PI Order enjoins competitive *conduct*, not employment *status*. Indeed, NPM told the Court Defendants would suffer "no cognizable hardship" from "honoring existing obligations, refraining from using NPM's Confidential Information, and competing fairly." Dkt. 155 at 15. Neither NPM's briefing nor the PI Order suggest the reading NPM now advances, and an order that does not "describe in reasonable detail . . . the . . . acts restrained or required" cannot support contempt. Fed. R. Civ. P. 65(d)(1)(C); *see Fonar Corp. v. Deccaid Servs., Inc.*, 983 F.2d 427, 429 (2d Cir. 1993) (vacating

[2] https://www.linkedin.com/help/linkedin/answer/a1336653 (explaining hibernation and reactivation).

contempt order "predicated on alleged violations of an unclear restraining order"); *King*, 65 F.3d at 1058 (a clear order leaves "no uncertainty in the minds of those to whom it is addressed" (quoting *Hess v. New Jersey Transit Rail Operations, Inc*., 846 F.2d 114, 116 (2d Cir. 1988))).

**B. NPM has not shown non-compliance by clear and convincing evidence.**

Hiive cannot have failed to comply with requirements that the PI Order did not clearly impose – *i.e.* terminating or deregistering Belzer or filing a Form U5. *See* Fed. R. Civ. P. 65(d)(1)(C).

As to Belzer, NPM relies on (1) Belzer's LinkedIn profile and BrokerCheck listing that accurately showed he remains a Hiive employee; (2) his LinkedIn reactions and comments; and (3) the absence of a Form U5. None shows that he provided any services to Hiive. The PI Order's purpose is to prevent unfair competition, not to prohibit Belzer from earning money while on garden leave or to keep Belzer away from his professional community. *See United States v. Vezina*, 165 F.3d 176, 179-80 (2d Cir. 1999) (vacating criminal contempt conviction; TRO barring "dealing with" certain companies "to prevent him from competing unfairly" could not be applied "to punish contacts that are not somewhat related to an effort to solicit the business") (citation omitted). NPM does not identify a single LinkedIn interaction that it contends establishes a violation. *See* Local Civ. R. 83.6(a) (a motion for contempt "must set out with particularity the misconduct complained of"). Instead, it relies on conclusory accusations that Belzer "engaged with Hiive's issuer and law-firm customers." Mot. 2. That is not clear and convincing evidence.

**C. Defendants complied in good faith.**

As NPM knows, Hiive placed Belzer on garden leave and cut off his access to its systems on October 6, before the PI Order even was entered. Ex. H. When NPM asked on November 11 that Belzer's profile be corrected, he acted promptly, and Hiive responded in writing that day and again on November 12 and 13, confirming his status and offering to confer as to further concerns. Exs. D, F, H. That is diligent, reasonable compliance. NPM's accusations that Defendants "made no effort" (Mot. 2) cannot be reconciled with its own exhibits.

**III. Attorneys' Fees Should be Awarded to Hiive, Not NPM.**

NPM's Motion was unnecessary. Hiive had confirmed in writing that Belzer had been cut off from Hiive systems and had not worked since October 6, that his LinkedIn account had not been deleted, and that Hiive was available to confer about any remaining concerns. Ex. H. NPM filed anyway and sought contempt findings based on a reading of the PI Order that NPM never requested, inaccurate statements about the communications attached to its Motion, and irresponsible accusations against Hiive and its in-house counsel. A fee award against Hiive is not warranted. *King*, 65 F.3d at 1063 (fees in a civil contempt proceeding require willful contempt). If anything, the Court should award attorneys' fees to Hiive. Local Civ. R. 83.6(d) (giving the court discretion to award a "reasonable counsel fee" against the complainant in a contempt proceeding).

Hiive and Belzer respectfully request that the Court deny NPM's Motion and award such further relief as it deems appropriate.

Respectfully submitted,

/s/ Megan DeMarco
Megan DeMarco

cc: All counsel of record (via ECF)

The Court has reviewed Plaintiff's motion to enforce the Court's Preliminary Injunction Order and its supporting exhibits (Dkt. #251), as well as Defendants' opposition thereto and their supporting exhibit (Dkt. #253).

Plaintiff contends that Mr. Belzer's LinkedIn activity indicates that he has continued working for and acting on behalf of Hiive as recently as November 11, 2026, in violation of the Preliminary Injunction Order. Plaintiff, accordingly, requests that this Court (i) hold Mr. Belzer in civil contempt of the Preliminary Injunction Order; (ii) require Defendants to submit declarations stating that last date Mr. Belzer ceased to work at Hiive, and swearing that they will continue to comply with the Preliminary Injunction Order; (iii) compel preservation of Mr. Belzer's LinkedIn activity; and (iv) impose appropriate sanction and attorneys' fees incurred in bringing this motion. According to Defendants, Plaintiff is also effectively requesting that Hiive terminate Mr. Belzer's employment, end his FINRA registration, and file a Form U5.

Plaintiff's application is DENIED. Nothing in the Preliminary Injunction Order forbids the conduct at issue here. For the avoidance of doubt, Hiive's decision to place Mr. Belzer on garden leave, rather than terminate his employment and registration, comports with the terms of the Preliminary Injunction Order. Mr. Belzer's LinkedIn activity — including listing his employer from which he is on garden leave and interacting with various colleagues' posts — appear to be routine and falls well short of violating the Preliminary Injunction Order. The Court, moreover, credits Hiive's assertion that Mr. Belzer "has not done any work for [Hiive] since [October 6, 2026]," the day of the Court's oral ruling on the Preliminary Injunction. (*See* October 6, 2026 Minute Entry).

Absent evidence of flagrant and clear violations of the Preliminary Injunction Order, the Court is not inclined to continue to adjudicate disputes over the minutiae of the Order.

The Clerk of Court is directed to terminate the pending motion at docket entry 251.

SO ORDERED.

Dated: November 19, 2026
New York, New York

Katherine Polk Failla

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE